# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**KIMBERLY C. ANDERSON**
480 Medinah Street
Oregon, WI 53575,

and

**CHRISTINA M. KUHLE**
480 Medinah Street
Oregon, Wisconsin 53575,

        Plaintiffs,

   v.

**CESA 2 EDUCATION
FOUNDATION, INC. D/B/A
COOPERATIVE EDUCATION
SERVICE AGENCY #2 (CESA 2)**
1221 Innovation Drive
Whitewater, Wisconsin 53190,

**JEDI VIRTUAL, INC.**
1221 Innovation Drive, Suite 219
Whitewater, WI 53190-1482,

and

**JAMIE SYVRUD**
324 Rosewood Avenue,
Lake Mills, WI 53551

        Defendants.

Case No:  2020-CV-_1558___

---

## COMPLAINT

---

Plaintiffs Kimberly C. Anderson ("Ms. Anderson") and Christina M. Kuhle ("Ms.

Kuhle") (collectively, the "Plaintiffs"), by and through their attorneys, DeWitt LLP, for

their complaint against CESA 2 Education Foundation, Inc., d/b/a Cooperation Education Service Agency #2 ("CESA 2"), JEDI Virtual, Inc. ("JEDI Virtual School"), and Jamie Syvrud ("Ms. Syvrud") (collectively, "Defendants"), allege and state as follows:

## NATURE OF ACTION

1.     Plaintiffs bring this action under, among other provisions, the Wisconsin Constitution, the U.S. Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 626(b), and Wisconsin contract law.

## THE PARTIES

2.     Ms. Anderson is an adult resident of the State of Wisconsin, a citizen of the State of Wisconsin, and resides at 480 Medinah Street, Oregon, Wisconsin 53575.

3.     Ms. Kuhle is an adult resident of the State of Wisconsin, a citizen of the State of Wisconsin, and resides at 480 Medinah Street, Oregon, Wisconsin 53575.

4.     Ms. Anderson identifies her sexual orientation as lesbian.

5.     Ms. Kuhle identifies her sexual orientation as lesbian.

6.     Ms. Kuhle was born in 1969.

7.     Ms. Anderson was born in 1971.

8.     Ms. Anderson and Ms. Kuhle are both over the age of 40; both were in the age protected category at all pertinent times prior to and at the time of their termination.

9.     Ms. Kuhle and Ms. Anderson are in a long-term, same-sex relationship and were in a relationship during all times relevant to the facts described in this Complaint.

2

10. Defendant CESA 2 is a governmental agency located in south central Wisconsin, incorporated, organized, and existing pursuant to Wis. Stat. Chap. 116. CESA 2 maintains a principal place of business at 1221 Innovation Drive, Whitewater, WI 53190.

11. According to public records made available by and through the Wisconsin Department of Financial Institutions ("DFI"), CESA 2's registered agent is Daniel Hanrahan, located at 1221 Innovation Drive, Whitewater, WI 53190.

12. CESA 2 is managed by an 11-member Board of Control, and its Chairperson is currently Nancy Thompson.[1]

13. Defendant JEDI Virtual School is a non-stock corporation organized and existing under the laws of the State of Wisconsin with its principal place of business located at 1221 Innovation Drive, Suite 219, Whitewater, WI 53190.

14. According to public records made available by and through the Wisconsin DFI, JEDI Virtual School's registered agent is Jamie Syvrud, located at 324 Rosewood Avenue, Lake Mills, Wisconsin, 53551.

15. Upon information and belief, Defendant Jamie Syvrud is an adult resident and citizen of the State of Wisconsin, residing at 324 Rosewood Avenue, Lake Mills, Wisconsin, 53551.

**JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION**

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

---

[1] *See* CESA 2, *Board of Control* (https://www.cesa2.org/about/board_of_control.cfm) (May 18, 2020).

17.     This Court has personal jurisdiction over all Defendants because each is a citizen of the State of Wisconsin, and each has its principal place of business or its residence in this District.

18.     This Court has Original Jurisdiction, pursuant to 29 U.S.C. § 1331, over Plaintiffs' Title VII claims.

19.     This Court has supplemental jurisdiction over this action under 28 U.S.C. § 1367, because the claims that arise under the laws of Wisconsin are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

20.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1 & 2), including because the Plaintiffs were employed by Defendants in the Eastern District of Wisconsin, and because a substantial part of the events and omissions giving rise to this Complaint occurred within the Eastern District of Wisconsin.

21.     On or about January 4, 2020, Ms. Anderson filed a timely Charge of Discrimination against CESA 2 with the United States Equal Employment Opportunity Commission ("EEOC") in EEOC Case Number # 443-2020-00663. On or about August 4, 2020, the EEOC issued a Notice of Right to File Suit to Ms. Anderson.

22.     On or about January 4, 2020, Ms. Anderson also filed a separate timely Charge of Discrimination against JEDI Virtual School with the EEOC in EEOC Case Number # 443-2020-01638. On or about August 4, 2020, the EEOC issued a Notice of Right to File Suit to Ms. Anderson.

23.     On or about January 4, 2020, Ms. Kuhle filed a Charge of Discrimination against CESA 2 with the United States Equal Employment Opportunity Commission

("EEOC") in EEOC Case Number #443-2020-00706. On or about August 4, 2020, the EEOC issued a Notice of Right to File Suit to Ms. Kuhle.

24.     On or about January 4, 2020, Ms. Kuhle also filed a separate timely Charge of Discrimination against JEDI Virtual School with the EEOC in EEOC Case Number # 443-2020-01641. On or about August 4, 2020, the EEOC issued a Notice of Right to File Suit to Ms. Kuhle.

25.     Plaintiffs have exhausted their administrative remedies.

## FACTUAL BACKGROUND

### A.     RELATIONSHIP BETWEEN CESA 2 AND JEDI.

26.     CESA 2 is one of 12 cooperative educational service agencies authorized under Chapter 116 of the Wisconsin Statutes.

27.     CESA 2 serves as a link between school districts, and a link between schools and the state of Wisconsin, including various school districts in Dane, Green, Jefferson, Kenosha, Racine, Rock, Walworth Counties.

28.     JEDI Virtual School is a public, K-12 online charter school. Students enrolled in the JEDI Virtual School are attending a public school, but do their schooling virtually, through a computer, tablet or other electronic device.

29.     JEDI Virtual School is operated by a Governing Board.

30.     JEDI Virtual School is one of the schools for which CESA 2 provides services and personnel.

31.     Pursuant to a contractual agreement between CESA 2 and JEDI Virtual School, CESA 2 provides JEDI Virtual School with personnel to run the JEDI Virtual School, including administrators, teachers, educational aides, and business service staff.

All such personnel are employees of CESA 2, but provide their services to JEDI Virtual School.

32. Ms. Anderson and Ms. Kuhle both had employment contracts with CESA 2, and both provided services for JEDI Virtual School.

33. CESA 2 is the management agent and fiscal agent of the JEDI Virtual School.

34. In or around Fall of 2019, a Memorandum of Understanding was prepared and executed between CESA 2 and JEDI Virtual School (the "MOU").

35. The purpose of the MOU was, among other things, to outline JEDI Virtual School's requirements for services provided by CESA 2 to assist in the daily operation of JEDI Virtual School.

36. Pursuant to the MOU:

a. JEDI Virtual School determines program objectives, direction, staffing requirements and job descriptions.

b. All personnel providing services in performance of daily operations of JEDI Virtual School must be employees of CESA 2. JEDI Virtual School has the right to approve, and to require removal and/or replacement of, personnel employed by CESA 2 to provide such services to JEDI Virtual School.

c. JEDI Virtual School provides performance reviews and evaluations of CESA 2 personnel providing services to JEDI Virtual School hereunder.

d. Salaries/hourly rates of CESA 2 personnel providing services to JEDI Virtual School are subject to approval by JEDI Virtual School.

6

e.      JEDI Virtual School personnel prepare and submit payroll information to CESA 2, and CESA 2 conducts payroll processing.

f.      JEDI Virtual School personnel submit approved invoices, mileage reimbursement and expenses for payment to CESA 2.

g.      CESA 2 processes JEDI Virtual School Accounts Payable that are approved by JEDI Virtual School and distributes payments.

h.      JEDI Virtual School is entitled to review and monitor all CESA 2 accounts receivable and all CESA 2 accounts payable.

37.     Discussions between CESA 2 and JEDI Virtual School regarding the MOU took place in closed sessions or "off the record."

38.     The MOU was never shared with Ms. Anderson or Ms. Kuhle prior to its adoption.

39.     Based on the overall relationship between CESA 2 and JEDI Virtual School, including as reflected in the MOU, CESA 2 and JEDI Virtual School are joint employers of both Ms. Anderson and Ms. Kuhle.

40.     CESA 2 and JEDI Virtual School were joint employers with respect to Ms. Anderson and Ms. Kuhle at all times material to the allegations in this Complaint.

41.     CESA 2's Board of Control Policies on Page 108, in the "Staff Discipline" policy states:

> "The Board of Control retains the right and the responsibility to manage the work force. When the discipline of a staff member becomes necessary, such action shall be in proportion to the employee's offense or misconduct, consistent with state and federal law including, but not limited to, **any procedural and substantive due process rights of the individual**." (emphasis added).

42.     Relevant excerpts of CESA 2's Board of Control Policies are attached to this Complaint as **Exhibit 1** and incorporated herein by reference.

7

43. As stated in the JEDI Virtual School Student & Family Handbook, "[i]t is the policy of the JEDI Virtual School, […] along with exceptions and defenses as defined by law, that no person shall be subject to discrimination on the basis of sex, sexual orientation, race, national origin, ancestry, color, creed, religion, age, pregnancy, marital or parental status, arrest or conviction record, or physical, mental, emotional or learning disability in its educational programs and in employment."

**B. FACTUAL ALLEGATIONS RELATING TO MS. ANDERSON'S TERMINATION.**

44. Ms. Anderson began her employment with CESA 2 in June 2013 in the position of Student Services Coordinator for JEDI Virtual School.

45. Throughout her employment, Ms. Anderson was employed by CESA 2 pursuant to one-year contracts, which were customarily renewed each year.

46. Ms. Anderson was employed by CESA 2, as the Student Services Coordinator for JEDI Virtual School from June 2013 until the Defendants unilaterally terminated her employment relationship in October 2019.

47. Key parts of Ms. Anderson's job in her position with CESA 2 as Student Services Coordinator included: (i) holding enrollment meetings with district students and parents; (ii) fielding questions about students looking to open enroll into JEDI; (iii) developing schedules for students; (iv) managing enrollments for students; and (v) maintaining electronic records of students.

48. During Ms. Anderson's employment with CESA 2, JEDI Virtual School did the following, among other things: (i) determined the program directives and objectives for Ms. Anderson's employment position; (ii) completed performance reviews and evaluations of Ms. Anderson; (iii) approved the salary and other compensation to Ms. Anderson; and

(iv) submitted invoices, reimbursements, and expenses to CESA 2 related to services provided by Ms. Anderson.

49.     Throughout her employment with CESA 2, and providing services for JEDI Virtual School, Ms. Anderson received only positive performance reviews.

50.     At no time during her employment with CESA 2 and providing services for JEDI Virtual School was Ms. Anderson reprimanded for her work performance, disciplined for any misconduct or other performance issue, or put on any type of employee improvement plan.

51.     In April 2019, as it had done in prior years, CESA 2 entered into a one-year Employment Contract for the 2019/20 academic year (the "Anderson Employment Contract"). A true and complete copy of the Anderson Employment Contract is attached to this Complaint as **Exhibit 2** and incorporated herein by reference.

52.     JEDI Virtual School approved Ms. Anderson to provide services for JEDI Virtual School during the 2019/2020 academic year.

53.     Under the Anderson Employment Contract, CESA hired Ms. Anderson "for a period of 230 days beginning on July 1, 2019 and ending on June 30, 2020" (the "Anderson Contract Period") to furnish services to those schools participating in CESA 2's JEDI Program."

54.     Under the Anderson Employment Contract, CESA 2 agreed to pay Ms. Anderson as follows:

3.     Salary and Payroll.

Agency [CESA 2] agrees to pay Employee [Ms. Anderson] a total annual amount of $64,022.00 for services as salary. Said amount of salary represents 100% employment of a full-time contract. Salary is to be paid in equal bi-weekly installments on every other Friday of each calendar month for a total of 12 months, 26 payments, such amount to be $2,462.38 less legal deductions and other deductions mutually agreed upon.

9

55.     The Anderson Employment Contract does not include any terms pertaining to employment termination by CESA 2 or JEDI Virtual School.

56.     The Anderson Employment Contract does include a "Reduction in Force" term stating:

> 6. <u>Reduction in Force</u>.
>
> If the Agency determines it is necessary to partially or completely reduce Employee's employment under and prior to the expiration of this contract (or any renewal or extension thereof), the Agency will notify Employee in writing of such reduction at least fourteen (14) days prior to the effective date and give an explanation for the intended action. Reasons for such reductions include, but are not limited to, a school district's refusal to allocate funds to support the contract for any reason, a reduction in the workforce, or cessation or reduction of a grant program. In such event, the Agency may consider and discuss with the Employee possible reassignment to other schools in the CESA 2 service area that may have need for and desire his or her services, if any.

57.     For most of Ms. Anderson's time with JEDI Virtual School, her supervisor was Leslie Steinhaus ("Ms. Steinhaus"), the JEDI Virtual School Director. Ms. Steinhaus was a CESA 2 employee, and was the long-time Director for JEDI Virtual School.

58.     In late April 2019, Ms. Steinhaus ended her employment with CESA 2; Ms. Steinhaus' position as JEDI Virtual School Director became vacant.

59.     With the Director position vacated, Pam Streich ("Ms. Streich") served as Acting Director for JEDI Virtual School from approximately April 2019 through August 2019. During that time, Ms. Streich was Ms. Anderson's supervisor.

60.     In June 2019, Ms. Anderson applied for the open Director's position Ms. Steinhaus had vacated.

61.     As the most senior member on the JEDI Virtual School Leadership Team, Ms. Anderson believed she was well-qualified and well-equipped for the open Director's position.

62. However, in early July, Ms. Anderson was informed by Nicole Bartlett that she would not be considered for the open JEDI Virtual School Director position.

63. On or about August 6, 2019, CESA 2 hired Jamie Syvrud ("Ms. Syvrud") for the position that Ms. Steinhaus had vacated—the Director of JEDI Virtual School.

64. Ms. Syvrud became the Director of the JEDI Virtual School, and became Ms. Anderson's immediate supervisor beginning on August 6, 2019.

65. Ms. Syvrud knew/knows that Ms. Anderson is a lesbian, as Ms. Anderson is open in regard to her sexual orientation.

66. Ms. Syvrud frequently referenced her church in Ms. Anderson's presence.

67. When Ms. Syvrud took over as Director, she started an investigation into Ms. Anderson's work performance due solely to her sexual orientation.

68. Ms. Anderson's positive work history and lack of disciplinary history did not warrant an investigation into Ms. Anderson's work performance. Furthermore, as the contract year had just begun, there were no performance issues or misconduct that warranted such an investigation at the outset of the 2019-2020 academic year.

69. On or about October 4, 2019, Ms. Syvrud informed Ms. Anderson that JEDI was balancing out the number of students assigned to Ms. Anderson by transferring some of her assigned students to another staff member. Ms. Syvrud informed Ms. Anderson that this balancing was solely due to the large number of students that were currently being handled by Ms. Anderson as compared with other staff.

70. Prior to that, Ms. Anderson had worked since 2014 to increase the number of open enrolled students with JEDI as directed by the JEDI Board, and had successfully increased open enrolled students from four students to more than 70 students. Many of the

11

students transferred away from Ms. Anderson in October 2019 were open enrolled students.

71.     On or about October 7, 2019, Ms. Anderson met with Ms. Syvrud, who once again confirmed that the balancing of the students was solely due to the unequal number of students assigned to her, and further confirmed that it was not in any way related to Ms. Anderson's job performance.  Ms. Syvrud further stated that Ms. Anderson's job was not in jeopardy.

72.     Upon information and belief, Ms. Syvrud reported the results of her investigation into Ms. Anderson to the JEDI Virtual School Board at a JEDI Virtual School Board Governance meeting on October 10, 2019.

73.     Upon information and belief, at the October 10, 2019 meeting, Ms. Syvrud presented false and inaccurate information related to Ms. Anderson's work performance to the Board of the JEDI Virtual School.

74.     Upon information and belief, at the October 10, 2019 meeting, Ms. Syvrud informed the Board of the JEDI Virtual School that Ms. Anderson: (i) was not following open enrollment policies and practices regarding students; (ii) was not building appropriate schedules for students to attain credits; (iii) was allowing students to stay in classes for indefinite amounts of time; and (iv) was giving parents false information regarding open enrollment.

75.     Upon information and belief, each of the alleged deficiencies with Ms. Anderson's work performance, as Ms. Syvrud presented them to the JEDI Board at the October 10, 2019 meeting, was false.

76. Upon information and belief, Ms. Syvrud knew that one or more of the alleged deficiencies she raised about Ms. Anderson's work performance was false.

77. Upon information and belief, the alleged deficiencies with Ms. Anderson's work performance, as Ms. Syvrud presented them to the JEDI Board, were not supported by substantive, objective evidence at the October 10, 2019, meeting.

78. Upon information and belief, the discussion about Ms. Anderson's work performance, including Ms. Syvrud's presentation about the results of her investigation, was done "off the record" or in a closed session.

79. Ms. Anderson was never notified that she was under investigation of any type by Ms. Syvrud.

80. Ms. Anderson was never notified that Ms. Syvrud was presenting results of her investigation into Ms. Anderson's work performance at the October 10, 2019, JEDI Board meeting.

81. Ms. Anderson never received information relating to the alleged deficiencies with her work performance.

82. Ms. Anderson was not present at the October 10, 2019, meeting.

83. Ms. Syvrud initiated the investigation into Ms. Anderson's work performance as a pretext for persuading JEDI Virtual School to refuse services from Ms. Anderson because Ms. Syvrud disapproves of Ms. Anderson's sexual orientation.

84. Ms. Syvrud presented false information to the Board of the JEDI Virtual School at the October 10, 2019, meeting to persuade JEDI Virtual School to refuse services from Ms. Anderson because Ms. Syvrud disapproves of Ms. Anderson's sexual orientation.

85.     The Board of the JEDI Virtual School voted to reject future services from Ms. Anderson.

86.     The Board of the JEDI Virtual School did not seek to independently verify the accuracy of the information about Ms. Anderson's work performance that Ms. Syvrud presented at the October 10, 2019, meeting, prior to rejecting services from Ms. Anderson.

87.     The Board of the JEDI Virtual School did not inform Ms. Anderson about the alleged deficiencies in her work performance prior to rejecting services from Ms. Anderson.

88.     The Board of the JEDI Virtual School did not provide Ms. Anderson with an opportunity to correct any alleged deficiencies in her work performance or put Ms. Anderson on an employee improvement plan prior to rejecting services from Ms. Anderson.

89.     The Board of the JEDI Virtual School did not seek input directly from Ms. Anderson about her allegedly deficient work performance prior to rejecting services from Ms. Anderson.

90.     JEDI Virtual School communicated its decision to decline any further services from Ms. Anderson to CESA 2.

91.     CESA 2 terminated Ms. Anderson in October 2019 as a direct result of Ms. Syvrud's and the Board of the JEDI Virtual School's actions.

92.     Both JEDI Virtual School and CESA 2 knew that Ms. Anderson was in the age protected category at all pertinent times prior to and at the time of termination.

93.     In a letter to Ms. Anderson dated October 11, 2019 (the "Anderson Termination Letter"), CESA 2, through its Agency Administrator, Daniel Hanrahan ("Mr.

Hanrahan"), notified Ms. Anderson that her employment under the Employment Agreement was terminated. A true and complete copy of the Anderson Termination Letter is attached to this Complaint as **Exhibit 3** and incorporated herein by reference.

94.     The Anderson Termination Letter states, among other things, that, "the reason for this […] action is the decision of the JEDI Board to refuse services provided by you […] effective immediately," and that, "[s]ince we no longer have work available for you, you are not required to perform any CESA 2 work between October 11 and October 28, 2019."

95.     Neither CESA 2, JEDI Virtual School, nor the JEDI Board provided Ms. Anderson with reasons for her termination beyond what is stated in the Anderson Termination Letter.

96.     Upon information and belief, CESA 2 did not seek an explanation from JEDI as to why it rejected future services from Ms. Anderson.

97.     Upon information and belief, CESA 2 did not seek to independently verify whether there were any deficiencies with Ms. Anderson's work performance and did not seek to determine whether JEDI's decision to reject future services from Ms. Anderson was supported by objective evidence.

98.     CESA 2 did not provide Ms. Anderson with an opportunity to correct any alleged deficiencies in her work performance or put Ms. Anderson on an employee improvement plan prior to terminating Ms. Anderson.

99.     CESA 2 did not seek input directly from Ms. Anderson about her allegedly deficient work performance prior to terminating Ms. Anderson.

100.    CESA 2 did not provide Ms. Anderson with any of the required procedural or substantive due process prior to terminating her employment, and thus did not adhere to its Board Control Policies.

101.    CESA 2's decision to terminate Ms. Anderson's employment was not proportionate to any offense or misconduct by Ms. Anderson as required by the Board Control Policies.

102.    At the time of her termination from CESA 2, Ms. Anderson was the most senior member on the JEDI Virtual School's Leadership Team, with the greatest amount of experience and education.

103.    At no time during the Contract Period prior to the Anderson Termination Letter was Ms. Anderson reprimanded for her work performance, put on an employee improvement plan, or otherwise disciplined in any way by CESA 2 or JEDI Virtual School.

104.    After receiving the Anderson Termination Letter on October 11, 2019, Ms. Anderson requested a letter of recommendation from CESA 2, including from both Pam Streich and Mr. Hanrahan.

105.    After receiving the Anderson Termination Letter on October 11, 2019, Ms. Anderson also listed Mr. Hanrahan as a reference on her subsequent application to become a substitute teacher within the Madison Metropolitan School District. Ms. Anderson's application is not complete until Mr. Hanrahan completes an online evaluation form regarding Ms. Anderson.

106.    To date, neither Ms. Streich nor Mr. Hanrahan have provided a letter of recommendation for Ms. Anderson, despite her history of positive performance reviews.

107.    To date, it does not appear that Mr. Hanrahan has completed the online evaluation form for Ms. Anderson's substitute teacher application.

108.    On or about October 14, 2019, within a few days of the Termination Letter to Ms. Anderson, CESA 2 posted a position notice to find a replacement employee for Ms. Anderson's former position as Student Services Coordinator. A true and correct copy of the position notice for Student Services Coordinator is attached to this Complaint as **Exhibit 4** and incorporated herein by reference.

109.    At about the same time CESA 2 terminated Ms. Anderson's employment with CESA 2, it also terminated Ms. Kuhle's employment with CESA 2 as well as a third employee who also was openly gay.

110.    The circumstances involved in Ms. Kuhle's termination are very similar to Ms. Anderson's termination, as further detailed below.

## C.    FACTUAL ALLEGATIONS RELATED TO MS. KUHLE'S TERMINATION.

111.    Ms. Kuhle began her employment with CESA 2 in August 2016 in the position of Learning Coach for JEDI Virtual School.

112.    From June 2017 through October 2019, when Defendants unilaterally terminated her employment, Ms. Kuhle served as the Registrar for JEDI Virtual School.

113.    Throughout her employment, Ms. Kuhle was employed by CESA 2 pursuant to one-year contracts, which were customarily renewed each year.

114.    Key parts of Ms. Kuhle's job in her position with CESA 2 as Student Services Coordinator included: (i) reporting final grades to districts; (ii) enrolling schedules into Skyward; (iii) maintaining all filing on Open enrolled students; (iv) organizing details

17

of all meetings and training; and (v) tracking attendance for open enrolled students and issue truancy warnings where necessary.

115. During her employment with CESA 2, JEDI Virtual School did the following, among other things: (i) determined the program directives and objectives for Ms. Kuhle's employment position; (ii) completed performance reviews and evaluations of Ms. Kuhle; (iii) approved the salary and other compensation to Ms. Kuhle; and (iv) submitted invoices, reimbursements, and expenses to CESA 2 related to services provided by Ms. Kuhle.

116. Throughout her employment with CESA 2, and providing services for JEDI Virtual School, Ms. Kuhle received only positive performance reviews.

117. At no time during her employment with CESA 2 and providing services for JEDI Virtual School was Ms. Kuhle reprimanded for her work performance, disciplined for any misconduct or other performance issue, or put on any type of employee improvement plan.

118. In April 2019, as it had done in prior years, CESA 2 entered into a one-year Employment Contract for the 2019/20 academic year (the "Kuhle Employment Contract"). A true and complete copy of the Kuhle Employment Contract is attached to this Complaint as **Exhibit 5** and incorporated herein by reference.

119. JEDI Virtual School approved Ms. Kuhle to provide services for JEDI Virtual School during the 2019/2020 academic year.

120. Under the Kuhle Employment Contract, CESA hired Ms. Kuhle "for a period of 230 days beginning on July 1, 2019 and ending on June 30, 2020" (the "Kuhle

Contract Period") to furnish services to those schools participating in CESA 2's JEDI Program.

121.    Under the Kuhle Employment Contract, CESA 2 agreed to pay Ms. Kuhle as follows:

> 3.    <u>Salary and Payroll</u>.
>
> Agency [CESA 2] agrees to pay Employee [Ms. Kuhle] a total annual amount of $41,290.00 for services as salary. Said amount of salary represents 100% employment of a full-time contract. Salary is to be paid in equal bi-weekly installments on every other Friday of each calendar month for a total of 12 months, 26 payments, such amount to be $1,588.07 less legal deductions and other deductions mutually agreed upon.

122.    The Kuhle Employment Contract does not include any terms pertaining to employment termination by CESA 2.

123.    The Kuhle Employment Contract does include a "Reduction in Force" term stating:

> 6. <u>Reduction in Force</u>.
>
> If the Agency determines it is necessary to partially or completely reduce Employee's employment under and prior to the expiration of this contract (or any renewal or extension thereof), the Agency will notify Employee in writing of such reduction at least fourteen (14) days prior to the effective date and give an explanation for the intended action. Reasons for such reductions include, but are not limited to, a school district's refusal to allocate funds to support the contract for any reason, a reduction in the workforce, or cessation or reduction of a grant program. In such event, the Agency may consider and discuss with the Employee possible reassignment to other schools in the CESA 2 service area that may have need for and desire his or her services, if any.

124.    From approximately August 2016 through April 2019, Ms. Kuhle's supervisor was the Director of JEDI Virtual School, Leslie Steinhaus. Ms. Steinhaus was a CESA 2 employee, and was the long-time Director for JEDI Virtual School.

125.    When Ms. Steinhaus left, the JEDI Virtual School Acting Director, Pam Streich, stepped in as Ms. Kuhle's supervisor; Ms. Streich was Ms. Kuhle's supervisor from approximately April 18, 2019 to August 6, 2019.

126. When Ms. Syvrud was hired as the Director of JEDI Virtual School in August 2019, Ms. Syvrud became Ms. Kuhle's immediate supervisor beginning on August 6, 2019.

127. Ms. Syvrud knew/knows that Ms. Kuhle is a lesbian, as Ms. Kuhle is open in regard to her sexual orientation.

128. Ms. Syvrud frequently referenced her church in Ms. Kuhle's presence.

129. When Ms. Syvrud took over as Director, she started an investigation into Ms. Kuhle's work performance.

130. Ms. Kuhle's positive work history and lack of disciplinary history did not warrant an investigation into Ms. Kuhle's work performance. Furthermore, as the contract year had just begun, there were no performance issues or misconduct that warranted such an investigation at the outset of the 2019-2020 academic year.

131. Upon information and belief, Ms. Syvrud reported the results of her investigation into Ms. Kuhle to the JEDI Virtual School Board at a JEDI Virtual School Board Governance meeting on October 10, 2019.

132. Upon information and belief, at the October 10, 2019, meeting, Ms. Syvrud presented false and inaccurate information related to Ms. Kuhle's work performance to the Board of the JEDI Virtual School.

133. Upon information and belief, at the October 10, 2019, meeting, Ms. Syvrud informed the Board of the JEDI Virtual School that Ms. Kuhle: (i) had incorrectly entered information into the Skyward information system as to student schedules and transcripts; and (ii) was not requesting or maintaining student records appropriately.

134.   Upon information and belief, each of the alleged deficiencies with Ms. Kuhle's work performance, as Ms. Syvrud presented them to the JEDI Board at the October 10, 2019 meeting, was false.

135.   Upon information and belief, Ms. Syvrud knew that one or more of the alleged deficiencies she raised about Ms. Kuhle's work performance was false.

136.   Upon information and belief, the alleged deficiencies with Ms. Kuhle's work performance, as Ms. Syvrud presented them to the JEDI Board, were not supported by substantive, objective evidence at the October 10, 2019, meeting.

137.   Upon information and belief, the discussion about Ms. Kuhle's work performance, including Ms. Syvrud's presentation about the results of her investigation, was done "off the record" or in a closed session.

138.   Ms. Kuhle was never notified that she was under investigation of any type by Ms. Syvrud.

139.   Ms. Kuhle was never notified that Ms. Syvrud was presenting results of her investigation into Ms. Kuhle's work performance at the October 10, 2019, JEDI Board meeting.

140.   Ms. Kuhle never received information relating to the alleged deficiencies with her work performance.

141.   Ms. Kuhle was not present at the October 10, 2019, meeting.

142.   Ms. Syvrud initiated the investigation into Ms. Kuhle's work performance as a pretext for persuading JEDI Virtual School to refuse services from Ms. Kuhle because Ms. Syvrud disapproves of Ms. Kuhle's sexual orientation.

143. Ms. Syvrud presented false information to the Board of the JEDI Virtual School at the October 10, 2019, meeting to persuade JEDI Virtual School to refuse services from Ms. Kuhle because Ms. Syvrud disapproves of Ms. Kuhle's sexual orientation.

144. The Board of the JEDI Virtual School voted to reject future services from Ms. Kuhle.

145. Upon information and belief, the Board of the JEDI Virtual School did not seek to independently verify the accuracy of the information about Ms. Kuhle's work performance that Ms. Syvrud presented at the October 10, 2019, meeting, prior to rejecting services from Ms. Kuhle.

146. The Board of the JEDI Virtual School did not inform Ms. Kuhle about the alleged deficiencies in her work performance prior to rejecting services from Ms. Kuhle.

147. The Board of the JEDI Virtual School did not provide Ms. Kuhle with an opportunity to correct any alleged deficiencies in her work performance or put Ms. Kuhle on an employee improvement plan prior to rejecting services from Ms. Kuhle.

148. The Board of the JEDI Virtual School did not seek input directly from Ms. Kuhle about her allegedly deficient work performance prior to rejecting services from Ms. Kuhle.

149. JEDI Virtual School communicated its decision to decline any further services from Ms. Kuhle to CESA 2.

150. CESA 2 terminated Ms. Kuhle in October 2019 as a direct result of Ms. Syvrud's and the Board of the JEDI Virtual School's actions.

151. Both JEDI Virtual School and CESA 2 knew that Ms. Kuhle was in the age protected category at all pertinent times prior to and at the time of termination.

152.    In a letter to Ms. Kuhle dated October 11, 2019 (the "Kuhle Termination Letter"), CESA 2, through its Agency Administrator, Daniel Hanrahan ("Mr. Hanrahan"), notified Ms. Kuhle that her employment under the Kuhle Employment Agreement was terminated. A true and complete copy of the Kuhle Termination Letter is attached to this Complaint as **Exhibit 6** and incorporated herein by reference**.**

153.    Upon information and belief, CESA 2 did not seek an explanation from JEDI as to why it rejected future services from Ms. Kuhle.

154.    Upon information and belief, CESA 2 did not seek to independently verify whether there were any deficiencies with Ms. Kuhle's work performance and did not seek to determine whether JEDI's decision to reject future services from Ms. Kuhle was supported by objective evidence.

155.    CESA 2 did not provide Ms. Kuhle with an opportunity to correct any alleged deficiencies in her work performance or put Ms. Kuhle on an employee improvement plan prior to terminating Ms. Kuhle.

156.    CESA 2 did not seek input directly from Ms. Kuhle about her allegedly deficient work performance prior to terminating Ms. Kuhle.

157.    CESA 2 did not provide Ms. Kuhle with any of the required procedural or substantive due process prior to terminating her employment, and thus did not adhere to its Board Control Policies.

158.    CESA 2's decision to terminate Ms. Kuhle's employment was not proportionate to any offense or misconduct by Ms. Kuhle as required by the Board Control Policies.

159.    Neither CESA 2, JEDI Virtual School, nor the JEDI Board provided Ms. Kuhle with reasons for her termination beyond what is stated in the Kuhle Termination Letter.

160.    Neither CESA 2, JEDI Virtual School, nor the JEDI Board provided Ms. Kuhle an opportunity for a hearing, meeting, or even a discussion regarding her termination.

161.    At no time during the Contract Period prior to the Kuhle Termination Letter was Ms. Kuhle reprimanded for her work performance, put on an employee improvement plan, or otherwise disciplined in any way by CESA 2.

162.    After receiving the Termination Letter on October 11, 2019, Ms. Kuhle requested a letter of recommendation from CESA 2, including from Mr. Hanrahan.

163.    To date, Mr. Hanrahan has not provided a letter of recommendation for Ms. Kuhle, despite her history of positive performance reviews.

**CLAIM ONE**
**Breach of Contract**
**(Both Plaintiffs Against CESA 2)**

164.    Plaintiffs reallege and incorporate by reference each of the factual allegations in the paragraphs above as if fully set forth herein.

165.    Plaintiffs each entered into a valid and enforceable contract with CESA 2 (the Anderson Employment Contract and the Kuhle Employment Contract) (collectively, the "Contracts").

166.    Plaintiffs fulfilled their obligations under the Contracts, including by performing services for CESA 2 until their termination.

24

167. The Contracts require CESA 2 to, among other things, pay Plaintiffs the agreed-upon compensation in exchange for Plaintiffs furnishing the agreed-upon services.

168. CESA 2 breached its promises and obligations to Plaintiffs pursuant to the Contracts, including by, among other things: (i) failing to allow Plaintiffs to furnish the agreed upon services for the full Contract terms ending on June 30, 2020; and (ii) failing to pay Plaintiffs as required under the Contracts.

169. Ms. Anderson has been damaged by CESA 2's breach of the Anderson Employment Contract in an amount no less than $46,505.00.

170. Ms. Kuhle has been damaged by CESA 2's breach of the Kuhle Employment Contract in an amount no less than $30,300.00.

**CLAIM TWO**
**Violation of Due Process Under Wisconsin and U.S. Constitution**
**(Both Plaintiffs Against CESA 2)**

171. Plaintiffs reallege and incorporate by reference each of the factual allegations in the paragraphs above as if fully set forth herein.

172. As employees of CESA 2, Plaintiffs each have a property interest in their employment with CESA 2.

173. Plaintiffs are each entitled to procedural due process prior to an adverse employment action such as termination by CESA 2.

174. Plaintiffs did not receive any such due process safeguards prior to their terminations in October 2019.

175. Neither Plaintiff received any pre- or post-termination hearing or review related to their respective terminations in October 2019.

176.     Plaintiffs have suffered damages caused by CESA 2's actions as described above, and Plaintiffs are entitled to obtain compensatory damages.

177.     Plaintiffs are entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**CLAIM THREE**
**Sex Discrimination in Violation of Title VII**
**of the Civil Rights Act of 1964, as Amended**
**(Both Plaintiffs Against CESA 2 and JEDI Virtual, Inc.)**

178.     Plaintiffs reallege and incorporate by reference each of the factual allegations in the paragraphs above as if fully set forth herein.

179.     Plaintiffs are both lesbians and were open with their sexual orientation during their employment.

180.     Plaintiffs each meet the definition of an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq*.

181.     CESA 2 is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq*.

182.     JEDI Virtual School is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq*.

183.     CESA 2 and JEDI Virtual School were joint employers of Ms. Anderson and Ms. Kuhle at all times material to this Complaint.

184.     CESA 2 and JEDI Virtual School discriminated against Plaintiffs by terminating them due to their sexual orientation.

185.     Plaintiffs were each meeting all legitimate job expectations when CESA 2 and JEDI Virtual School terminated them.

186.     CESA 2 and JEDI Virtual School employed and utilized the services of similarly situated heterosexual employees who were not terminated.

187. Plaintiffs were treated less favorably than other similarly situated heterosexual employees.

188. Upon information and belief, Plaintiffs were replaced by heterosexual employees in their respective employment positions.

189. CESA 2 and JEDI Virtual School discriminated against Plaintiffs on the basis of their sexual orientation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000, *et. seq*.

190. As a direct and proximate result of CESA 2's actions and the actions of JEDI Virtual School, Plaintiffs have suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other damages.

191. Plaintiffs are each entitled to an award of back pay and benefits, compensatory damages, front pay, attorneys' fees, experts' fees and costs (including pursuant to 42 U.S.C. § 1988), and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

192. CESA 2 and JEDI Virtual School acted intentionally and maliciously with respect to Plaintiffs, entitling Plaintiffs to recover punitive damages against CESA 2 and JEDI Virtual School.

193. Additionally, or in the alternative, CESA 2 and JEDI Virtual School undertook its unlawful conduct recklessly with respect to Plaintiffs and Plaintiffs' federally protected rights, entitling Plaintiffs to recover punitive damages against CESA 2 and JEDI Virtual School.

**CLAIM FOUR**
**Age Discrimination in Violation of the Age Discrimination**
**in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 626(b)**
**(Both Plaintiffs Against CESA 2 and JEDI Virtual Inc.)**

194.     Plaintiffs reallege and incorporate by reference each of the factual allegations in the paragraphs above as if fully set forth herein.

195.     On or about June 2019, CESA 2 and JEDI Virtual School engaged in unlawful employment practices, in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), when it refused to hire Ms. Anderson, who was in the protected age group as defined in Section 12 of the ADEA, 29 U.S.C. § 631, as CESA 2's School Director, even though she had many years of experience performing tasks similar, if not identical, to the ones this position required, because of her age.

196.     CESA 2 and JEDI Virtual School ultimately hired a less-experienced and much younger candidate in Ms. Syvrud.

197.     In October 2019, CESA 2 and JEDI Virtual School terminated both Plaintiffs' employment with CESA 2 in part because of both Plaintiffs' respective ages.

198.     Both JEDI Virtual School and CESA 2 knew that both Plaintiffs were in the age protected category at all pertinent times prior to and at the time of termination.

199.     The effect of CESA 2 and JEDI Virtual School's conduct to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect Plaintiffs' status as an employee, because of Plaintiffs' age.

200.     CESA 2 and JEDI Virtual School's unlawful employment practices described above were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

28

## CLAIM FIVE
### Tortious Interference with Contracts
### (Both Plaintiffs Against Jamie Syvrud)

201.     Plaintiffs reallege and incorporate by reference each of the factual allegations in the paragraphs above as if fully set forth herein.

202.     Both Plaintiffs had a contract with CESA 2 for the 2019/20 academic year (the Anderson Employment Contract and the Kuhle Employment Contract) to provide services for JEDI Virtual School.

203.     As the Director of JEDI Virtual School, Ms. Syvrud knew that each Plaintiff had a contract with CESA 2 to provide services for JEDI Virtual School.

204.     Upon information and belief, Ms. Syvrud interfered with the employment relationship between Ms. Anderson and CESA 2, and the employment relationship between Ms. Kuhle and CESA 2, by, among other things: (i) initiating an investigation into Plaintiffs' work performance, despite both Plaintiffs having a history of positive performance reviews and no complaints against them; (ii) presenting false and misleading information to the Board of the JEDI Virtual School, including at the October 10, 2019 meeting.

205.     Upon information and belief, Ms. Syvrud knew and intended that her actions would result in the terminations of both Plaintiffs.

206.     As a result of Ms. Syvrud's actions, the Board decided to refuse services from Plaintiffs, and CESA 2 terminated Plaintiffs.

207.     Ms. Syvrud was not privileged to interfere in the employment contract between CESA 2 and Plaintiffs.

## RELIEF SOUGHT

WHEREFORE, in light of the allegations of fact and causes of action outlined above, Plaintiffs seek the following:

1.      Compensation from CESA 2 to Ms. Anderson for the remainder of the Anderson Employment Contract term in the amount of no less than **$46,505.00**;

2.      Compensation from CESA 2 to Ms. Kuhle for the remainder of the Kuhle Employment Contract term in the amount of at least **$30,300.00**;

3.      Compensation for the costs and expenses each Plaintiff incurred to enforce its contractual and other rights, including reasonable attorneys' fees and costs, and for interest;

4.      Any and all damages and relief available under federal and state law as a result of CESA 2's denial of due process in its terminations of both Plaintiffs, including but not limited to compensatory damages and an award of attorneys' fees and costs, including as permitted under 42 U.S.C. § 1988(b);

5.      Any and all damages and relief available under federal law as a result of discrimination by CESA 2 against each of the Plaintiffs on the basis of sexual orientation, and against Ms. Anderson on the basis of age, including but not limited to compensatory damages, back pay, punitive damages, and an award of attorneys' fees and costs;

6.      Any and all compensation and damages from Ms. Syvrud available under Wisconsin law for tortious interference with a contract, including but not limited to: (i) an amount no less than $46,505.00 to Ms. Anderson for the remainder of the Anderson Employment Contract term; and (ii) an amount no less than $30,300.00 to Ms. Kuhle for the remainder of the Kuhle Employment Contract term; and

7.      Such other relief in law or in equity that the Court deems proper and just.

## JURY DEMAND

Plaintiffs demand a trial by jury in this matter.

Dated this 8th day of October, 2020.

### DeWitt LLP


By:___/s/ Stephen A. DiTullio_____
       Stephen A. DiTullio (WI Bar No. 1019446)
       Jordan Rohlfing (WI Bar No. 1088042)
       C. Kai Hovden (WI Bar No. 1106888)
       Two East Mifflin Street, Suite 600
       Madison, WI  53703-2865
       sad@dewittllp.com
       jxr@dewittllp.com
       ckh@dewittllp.com
       608-255-8891

       **ATTORNEYS FOR PLAINTIFFS**